143 So.2d 17 (1962)
Josephine DEL VECCHIO, Petitioner,
v.
Samuel DEL VECCHIO, As Executor of the Estate of Domenico Del Vecchio, Deceased, Respondent.
No. 31607.
Supreme Court of Florida.
June 29, 1962.
*18 Fuller Warren, Miami, for petitioner.
Patton & Kanner and William H. Morrow, Jr., Miami, for respondent.
CALDWELL, Justice.
This case is here on a petition for writ of certiorari based upon an alleged direct conflict between the decision of the District Court of Appeal[1] and the decision of this Court in the case of Weeks v. Weeks.[2] The two decisions are in direct conflict on the same point of law, and this court has jurisdiction under Section 4(2), Article V, Constitution of Florida, F.S.A.
*19 The cause was instituted in the circuit court by the petitioner against the respondent, as executor of the estate of petitioner's deceased husband, to have set aside an antenuptial agreement entered into between her and her deceased husband in 1946.
The petitioner, then employed in a restaurant as a waitress and cashier, and the deceased first met in 1939 when she was living in the District of Columbia, in a rented house owned by him. The friendship between the petitioner and the deceased was more than casual for some years prior to the death of the deceased's former wife in 1945, after which they were married and lived together until his death in May, 1958. At the time of the marriage the deceased was 68 years of age and the petitioner was 35. She had assets valued at approximately $8,000 and the deceased was a man of considerable means who owned, together with his son, a chain of hardware stores in Washington, D.C.
It appears the son was the moving party in promoting the antenuptial agreement, the reason being his desire to protect his interest in the hardware business. By the terms of the agreement the petitioner released all interest in property located in Washington, District of Columbia, of which the prospective husband was then seized and, in return, the deceased agreed to convey to the petitioner, as a tenant by the entirety, a home in Washington, D.C.
It does not appear that, prior to the execution of the agreement, full disclosure was made to the petitioner of the nature and extent of the prospective husband's property, nor that she had independent advice as to her legal rights. It does appear that the petitioner was conversant with the fact that the deceased and his son were proprietors of a hardware business in the city and that he owned other property.
The chancellor found that, at the time of the marriage, decedent was worth about a half-million dollars and that no full and fair disclosure was made to the petitioner of the extent of the decedent's holding. The antenuptial agreement was held to be invalid and set aside.
On appeal the decree of the chancellor was reversed, the district court holding "* * * the establishment of the mere failure to disclose, where the facts and circumstances indicate that the individual knew or should have known of the other's financial status, would not, in the absence of other factors, render the antenuptial agreement void." It was held that, since the petitioner "knew or should have known that he was a man of considerable substance" the agreement was valid notwithstanding the fact that no disclosure was made of the husband's assets prior to the execution of the agreement.
The Weeks case, supra, cited with approval the Murdock case[3] which, in essential part, held the rule to be:
"The rule in this state is well settled that a man and woman who contemplate marriage may by an antenuptial contract, if there is full knowledge on the part of the intended wife of all that materially affects the agreement, settle their property rights in each other's estates. Yet it is held, if it appear that the provision made for the intended wife is disproportionate to the means of the intended husband, a presumption is raised in her favor that the execution of the agreement was brought about by a designed concealment of the amount of his property by the intended husband, and that the husband, or persons claiming through him, in order to sustain the agreement, have cast upon them the burden of proof to show that the intended wife, at the time she executed the agreement, had full knowledge of the nature, character, and value of the intended husband's property, or that the circumstances were *20 such that she reasonably ought to have had such knowledge."
The district court did not follow the Weeks case in the case at bar and a conflict resulted, giving this Court jurisdiction. Where, as in this case, the provision made for the wife is, upon the face of the agreement, disproportionate to the means of the husband the burden, under the Weeks rule, is cast upon the executor to show that the wife, at the time she executed the agreement, had or reasonably ought to have had full knowledge of the husband's property.
The subject of antenuptial agreements has not heretofore been squarely presented to this Court. The Weeks case, supra, involved a separation agreement which, although not the principal question in the case, led to the establishment of precedent for both antenuptial and separation agreements. Inasmuch as such agreements are in harmony with the public policy and often conducive to marital tranquility, it seems necessary that we now re-examine the rule and express our views with more particularity.
A valid antenuptial agreement contemplates a fair and reasonable provision therein for the wife, or, absent such provision, a full and frank disclosure to the wife, before the signing of the agreement, of the husband's worth, or, absent such disclosure, a general and approximate knowledge by her of the prospective husband's property. The term "approximate" is, for this purpose, held synonymous with "near", "close to" or "approaching".
If the provision made by the agreement is not fair and reasonable then it should be made to appear that the wife, when she signed, had some understanding of her rights to be waived by the agreement. In any event she must have signed freely and voluntarily, preferably, but not necessarily a required pre-requisite, upon competent and independent advice.
Inadequacy of provision for the wife does not in itself vitiate an antenuptial agreement. If, when she signed the contract freely and voluntarily, she had some understanding of her rights and had been fully informed by the husband as to his property or if, notwithstanding the husband's failure to disclose, she had or reasonably should have had a general and approximate knowledge of the character and extent of his property she will be bound.
The questions of whether she had some understanding of her rights and had or reasonably should have had a general and approximate knowledge of her future husband's property are matters of fact to be determined by the chancellor upon the evidence and his finding thereon will not lightly be disturbed.
In weighing the fairness and reasonableness of the provision for the wife the courts will consider the relative situation of the parties, their respective ages, health and experience, their respective properties, their family ties and connection, the wife's needs and such factors as tend to show whether the agreement was understandingly made.
The basic criterion is the element of fairness between the parties, which will be evaluated in the light of the facts touching the husband's property and the question of whether the provisions made for the wife will enable her to live after the dissolution of the marriage ties in a manner reasonably consonant with her way of life before such dissolution and certainly no less confortably than before the marriage. The element of fairness should, of course, be measured as of the time of the execution of the agreement.
Ordinarily the burden of proof of the invalidity of a prenuptial contract is on the wife alleging it but if, on its face, the contract is unreasonable a presumption of concealment arises, the burden shifts, and *21 it is incumbent upon the husband to prove validity. But in the application of this rule careful consideration of the several factors mentioned above is indicated. If, when the contract is made, the prospective husband was a man of the world and the prospective bride relatively inexperienced then clearly such presumption is indicated. But if, on the other hand, the prospective husband is a commonplace and elderly drab and the prospective bride a worldly-wise and winsome young woman the rule should be applied, if at all, with caution.
The relationship between the parties to an antenuptial agreement is one of mutual trust and confidence. Since they do not deal at arm's length they must exercise a high degree of good faith and candor in all matters bearing upon the contract. The courts will no longer indulge the archaic presumption of dominance by the husband but they will scrutinize such agreements and will require good faith disclosure by the prospective husband of the material facts relating to the character and value of his property showing that the prospective bride possessed such general and approximate knowledge of his property as to enable her to reach an intelligent decision to enter into the agreement.
Unless it be shown that the woman is, in fact, the dominant and moving party the burden is not upon her to inquire, but upon the man to inform. And while the disclosure should be full, fair and open, it need not be minutely detailed nor exact. The test is the adequacy of the knowledge of the woman  she must have had some understanding of her rights and a general and approximate knowledge of his property and resources. The basic issue is concealment, not the absence of disclosure, and the wife may not repudiate if she is not prejudiced by lack of information.
Insofar as what we have said herein may be in conflict with former decisions of this Court such former decisions are modified.
Certiorari is granted. The opinion and judgment of the district court is quashed with directions that the cause be remanded to the trial court for further proceedings and the taking of additional testimony if necessary and the entry of a decree not inconsistent with the views herein expressed.
ROBERTS, C.J., and TERRELL and DREW, JJ., concur.
THOMAS, THORNAL and O'CONNELL, JJ., dissent.
NOTES
[1] 132 So.2d 771 (Fla.App.3rd 1961).
[2] 143 Fla. 686, 197 So. 393 (1940).
[3] Murdock v. Murdock, 219 Ill. 123, 128, 76 N.E. 57, 59, (1905).