## CANTOR v. PALMER, et al.

No. 62-C-13661.

Circuit Court, Dade County.

July 17, 1963.

Albert L. Weintraub and A. Jay Cristol, both of Miami, for plaintiff.

Bernard C. Fuller, Miami Beach, and Milton M. Ferrell, Miami, for defendants.

RALPH O. CULLEN, Circuit Judge.

This cause came on to be heard on July 9, 1963, upon plaintiff's complaint and the answer of defendants, the defendants having withdrawn a counterclaim contained therein. Edith Cantor is the widow of William E. Cantor ("Cantor" hereafter) who departed this life on March 15, 1962. The parties stipulated that the value of his estate at the time of his death was approximately $123,000. The value of Cantor's estate in November 25, 1953, was approximately $80,000 according to the testimony of his daughter, a defendant in this cause. Cantor and the plaintiff, Edith Cantor, entered into an antenuptial agreement dated November 25, 1953. The plaintiff executed the same as Edith Birken, she having been formerly married to a man named Birken. Cantor was 61 years of age at the time the parties married and Edith Birken was 51 years of age. The parties were united in marriage by a civil ceremony in New York state on December 20, 1953, and lived together as man and wife until Cantor died.

The plaintiff attempted to prove a common law marriage and testified she came to Florida with Cantor in 1950. She admitted that she and Cantor were residents of New York all of their lives until the year 1956. The court finds that the plaintiff failed to establish a common law marriage and that the antenuptial agreement entered into between the parties on November 25, 1953, was entered into between them as single persons.

The plaintiff is contending that said antenuptial agreement should be set aside on the ground that Cantor failed to make a frank and unreserved disclosure of all circumstances bearing on such agreement. Under the antenuptial agreement both parties released any and all interest either might have in the estate of the other except such sums as were provided for in the last wills and testaments of the parties. Cantor's last will and testament, dated July 25, 1961, provided that Edith Cantor should receive $5,000 in cash, plus one-half of the income from property in Homestead, Florida. It further provided that in the event of a sale of said

property, then one-half of the proceeds thereof was to go in trust for the benefit of Edith Cantor, with her to receive the income thereof plus $1,000 per year principal, so long as she was single and to terminate upon her death. Edith Cantor filed an election to take dower in the county judges' court in and for Dade County, Florida, in the estate of William E. Cantor. The county judge withheld action upon this, subject to the ruling of this court in this suit.

Edith Cantor had been living with Cantor for approximately three years prior to the date of their marriage. Cantor had the agreement prepared and he delivered it to Edith Birken unsigned with the suggestion that she discuss it with a lawyer. She took the agreement and went alone to the office of George C. Bluestone, a lawyer of her own choice and selection, and a cousin of hers, who had practiced law since 1930. She discussed the agreement with him for about 30 minutes and then signed the agreement in his office and it was witnessed by him. George C. Bluestone testified that he explained to Edith Birken her rights and privileges generally, and that he had no communication with Cantor or his attorney. Thereafter, the agreement was delivered by her to Cantor and was executed by him, and then on November 27, 1953 notarized by both parties. At the end of the agreement appears this statement —

> The undersigned, an attorney and counsellor at law of the State of New York, with his office at 165 Broadway, New York, N. Y. hereby states that he was retained by EDITH BIRKEN, the first party, to act as her attorney and to represent her in connection with the foregoing document which is an antenuptial agreement between EDITH BIRKEN, as first party, and WILLIAM E. CANTOR, as second party; that he has fully examined the said antenuptial agreement and has fully explained to said EDITH BIRKEN her rights and privileges in the event of marriage as a surviving spouse under the Decedent Estate Law of the State of New York; and generally under the laws of the other states; that he has fully acquainted said EDITH BIRKEN of her rights and privileges generally as wife and surviving spouse in the event of the second party's death; that he has fully investigated and discussed with her the financial resources of the second party; that EDITH BIRKEN has made her own investigation of the second party's financial resources; that after such investigation and explanations the said first party, EDITH BIRKEN, has freely and voluntarily and in the absence of the second party or any of his representatives, signed this agreement and acknowledged the same before a notary public and that the said attorney has signed his name as a witness to the signature of the first party to this agreement.

> /s/ *George Bluestone*

Although her education did not proceed beyond two years of high school, plaintiff gave every indication of being perfectly normal; if not above average in intelligence, perception and knowledge generally. She said that she read the agreement before

signing and did not deny that she understood it fully. She said she made no investigation of her intended husband's financial status, and in explanation, said — "He wanted me to sign it, so I did." There was testimony adduced by the defendants that Edith Cantor made the statement after the execution of said agreement that she knew that "she had signed her life away."

She was present at the closing of the purchase by Cantor of a motel in Dade County, Florida, in 1950, and visited a liquor store in New York in which he owned an interest, and knew he owned stock. The record supports the conclusion that during the three years she lived with him prior to the agreement she acquired a general and approximate knowledge of his resources and property. The circumstances were such that, if she did not have a general and approximate knowledge of the character and extent of her intended husband's property, she reasonably ought to have had such knowledge.

There is nothing in the record in this case indicating the slightest influence, coercion, constraint, persuasion, overreaching or action that might be suspect on the part of Cantor with regard to this antenuptial agreement. Unfortunately, Cantor is not here to give his version of the matter but there is no testimony from which it could be inferred that there was any concealment on his part of any of his resources or any lack of good faith and candor. There is no doubt that plaintiff had a thorough understanding of her rights and that she executed the agreement freely and voluntarily.

The court further finds that Edith Cantor lived with Cantor until his death and at no time made any objection or took any action concerning said antenuptial agreement.

The defendants cited to the court in argument the Decedent Estate Law of New York, section 18 (9), and contended that since the parties were residents of the state of New York at the time the antenuptial agreement was entered into the lex loci contractus governed. Said New York law cited was as follows —

The husband or wife, during the lifetime of the other, may waive or release the right of election to take as against a particular last will, or as against any last will of the other spouse. A waiver or release of all rights in the estate of the other spouse shall be deemed to be a waiver or release of the right of election as against any last will. A waiver or release to be effective under this subdivision shall be subscribed by the maker thereof and either acknowledged or proved in the manner required for the recording of a conveyance of real property.

A waiver or release of the right of election granted in this section shall be effective, in accordance with its terms, whether

(a) executed before or after the marriage of the spouses affected;

(b) executed before, on, or after September first, nineteen hundred thirty;

(c) unilateral in form, executed only by the maker thereof, or bilateral in form, executed by both of the spouses affected;

(d) executed with or without consideration;

(e) absolute or conditional.

The defendants further cited the case of In re Moore's Will (1943), 41 N.Y.S. 697. The court is of the opinion that the New York law favors the defendants but that it matters little whether the New York law or the Florida law is applicable because the Supreme Court of Florida, in Del Vecchio v. Del Vecchio, 143 So. 2d 17, laid down the principle that if the wife had some understanding of her rights to be waived, and she signed an antenuptial agreement freely and voluntarily, the same would be upheld. The court further pointed out that it was preferable that the understanding by the wife be shown by showing that she had received competent and independent advice, but that this fact could be shown otherwise. This court has already found that Edith Cantor did have such understanding of her rights, and that she executed the antenuptial agreement freely and voluntarily.

The court having considered all of the evidence and the pleadings and having made the above findings and being otherwise informed in the premises, it is ordered, adjudged and decreed that the plaintiff's complaint is dismissed, with prejudice, for the reason that the court finds said antenuptial agreement to be valid. A motion for the assessment of costs will be entertained upon application of the defendants.