398 So.2d 503 (1981)
Darrel CARNELL, Appellant,
v.
Suzanne M. CARNELL, Appellee.
No. 80-244.
District Court of Appeal of Florida, Fifth District.
May 27, 1981.
*505 William M. Barr of Raymond, Wilson, Conway, Barr, Burrows & Jester and Isham W. Adams of Adams & Briggs, Daytona Beach, for appellant.
Michael R. Walsh, Orlando, for appellee.
PER CURIAM.
This is an appeal from a judgment dissolving the marriage of the parties and incorporating the provisions of an antenuptial agreement.
This was the third marriage for the wife and the fourth for the husband. Appellant-husband, who prepared and insisted upon the agreement, was an attorney. One would normally expect a man with so much practical and legal experience to be cautious and apprehensive about entering another marriage, especially one fortified and engrafted with an agreement of devastating consequences. However, appellant, with single-minded determination, pursued appellee. She was reluctant to marry again, explaining that she wanted to be sure that this would be a lasting marriage. To allay her fears and to assure her future, appellant prepared a prenuptial agreement which appellee typed verbatim from his draft. He insisted that she execute it although she apparently was then willing to marry him without the agreement.
Unfortunately, while the agreement provided for the eventuality of divorce, appellant apparently did not regard it as probable or even possible. The agreement provided that appellee would receive appellant's interest in the home which he owned prior to the marriage and one-half of his disposable income and one-half of his retirement as alimony until she remarried. The eventuality became a reality after only two years when dissolution proceedings were begun by the wife. The agreement did not contain any protection for the husband should the marriage be short, that a prudent attorney would be expected to include. Little was required of the wife. Here, unfortunately, appellant can only blame himself for the poor advice of his attorney.
The leading cases in the area of antenuptial agreements are Posner v. Posner, 233 So.2d 381 (Fla. 1970), and Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962). In Del Vecchio, the Florida Supreme Court held that an antenuptial agreement will be upheld if:
1. The agreement contemplates a fair and reasonable provision for the spouse, or
2. Absent such a provision, a full and frank disclosure has been made to the spouse, or
3. Absent such a disclosure, the spouse has a general and approximate knowledge of the property of the spouse.[1]
The case before us is unique in that it is the person who prepared and insisted upon the agreement who now urges its unfairness.
Appellant contends first that appellee fraudulently concealed the fact that her alimony was rehabilitative and was scheduled to terminate in September 1980 and *506 that had he been aware her alimony was rehabilitative, rather than periodic, he would not have given the wife such a generous settlement as compensation for her loss of support upon their marriage.
An antenuptial agreement obtained by fraud or concealment may be set aside. Moss-Jacober v. Moss, 334 So.2d 89 (Fla.3d DCA 1976), cert. dismissed, 353 So.2d 676 (Fla. 1977). However, the trial court specifically found no fraud or concealment. The finding of the trial judge is presumed correct and will be upheld if supported by substantial, competent evidence. Shaw v. Shaw, 334 So.2d 13 (Fla. 1976). While there was a conflict in the testimony as to whether appellant read the provisions of the judgment dissolving appellee's former marriage, there is no doubt that he saw it. If appellee's representations as to the nature of her alimony were important to him, he had only to look because the judgment clearly, with emphasis, designates her alimony as rehabilitative.
Appellant also contends that the agreement should be set aside on the basis of undue influence and overreaching. He claims that appellee was the dominant party in the relationship, remaining "cool as a cucumber" while he was "swept off his feet." He is correct that the parties to an antenuptial agreement do not deal at arm's length and therefore must exercise a high degree of good faith and candor in their dealings. Del Vecchio, 143 So.2d at 21; Lutgert v. Lutgert, 338 So.2d 1111 (Fla.2d DCA 1976). The trial court found, and we agree, that the evidence does not support appellant's position. Appellee testified that she was afraid to marry a third time, that she was satisfied with her life style, that appellant suggested the idea of an antenuptial agreement to protect her interests and to insure financial security for herself and her four children, and that she did not ask for the agreement. She further testified that he stated the agreement was valid and would protect her in the event the marriage did not work out, that he said he could be trusted, and that she did not have to be afraid, that he was a lawyer and a judge and that he knew how to draft such agreements. He also encouraged her to review it with an attorney of her own choosing.
The husband also contends that the agreement is so unfair and unreasonable that it must be set aside. Where one party has overreached the other and gained an unjust and undeserved advantage which would be inequitable to enforce, the courts may refuse to enforce the agreement even though the victimized parties owe their predicament largely to their own stupidity and carelessness. Peacock Hotel v. Shipman, 103 Fla. 633, 138 So. 44 (1931). "The freedom to contract includes the right to make a bad bargain." Posner at 536. The controlling question here is whether there was overreaching and not whether the bargain was good or bad. Had the wife given up a large alimony entitlement, given the husband an expensive house, and waived all right to alimony or other property upon divorce as part of an agreement prepared by husband, an attorney, a case of overreaching might arise. In such a case, the very unfairness and the superior position of the procuring party would raise a presumption of overreaching. Lutgert at 1115. In the instant case, however, the procuring party and the one with superior knowledge and experience asked the trial court to set aside the agreement because his prize turned out to be brass rather than pure gold. While appellant may have been overeager, he was not overreached.
Appellant also maintains that appellee evidenced an intent to abandon the agreement by failing to pay for all of the remodeling work. Had the wife abandoned or repudiated the agreement, the appellant would be correct. Plant v. Plant, 320 So.2d 455, 457 (Fla.3d DCA 1975).
The antenuptial agreement provided that:
The wife agrees that she will contribute such portion of her separate estate as may be reasonably required to complete the remodeling and refurbishing of the marital home. (Emphasis added.)
*507 The parties do not agree as to what they intended by the word "portion." The wife's estate was comprised of $20,000 to $25,000 in assets. She contributed $4,000 in cash to the remodeling job which ultimately cost $29,350, an amount which considerably exceeded both parties' estimates. While the wife refused to contribute more to the remodeling, contending that her assets came from the sale of her home and that husband did not expect her to give up all she had, she did, however, express a willingness to execute a bank loan. She explained her refusal to join in a note to his mother by stating that she thought it improper for husband to require his eighty-three year old mother to sell stocks in which she had invested and to accept a low interest note. When appellant went ahead and borrowed the money and secured it with a mortgage (which only he executed) on the home, appellee, after the separation, continued to make the payments and offered to continue making them. There is nothing to indicate that this was not sufficient compliance with her agreement to contribute a "portion" of her estate.
Appellant further contends that he was denied due process because, as a result of the suggestion of counsel for the wife, the trial judge required the parties to be searched for firearms prior to trial. The record reflects that counsel for husband announced he had no objection. Also, no motion to disqualify the trial judge was made. See Trawick's Florida Practice and Procedure § 2-3 (1979). This point cannot be raised for the first time on appeal. Palmer v. Thomas, 284 So.2d 709 (Fla. 1st DCA 1973).
Lastly, appellant contends that he was denied due process with regard to certain orders concerning rehearing, stay, supersedeas, and support provisions during this appeal because the orders were entered without an opportunity to the parties to present oral argument. As to the motions for stay and supersedeas, the trial court granted appellant's motion so his position that reversible error was committed by failing to give him an opportunity to appear has no basis.
As to the motion for rehearing, we find that the Florida Rules of Civil Procedure do not specifically provide for a hearing. In Seaboard Coast Line Railroad Co. v. Magnuson, 288 So.2d 302 (Fla. 4th DCA 1974), the court held that when one of the parties to an adversary proceeding files a timely motion for a new trial under rule 1.530, due process requires a hearing after notice to all parties. In that case, the court held that error was harmless as all matters in the motion had been previously argued during the course of the trial. In Alberger v. Harvison, 342 So.2d 537 (Fla.3d DCA 1977), the court found that the error, if any, in failing to hold a hearing on a post-trial motion was harmless as no new matter was raised in the motion that had not already been argued before the trial judge. The court, however, noted that a thorough examination of the rules of civil procedure found no language requiring a hearing and, while recognizing the due process argument in Seaboard, refused to comment on its correctness. Both of these cases involved jury trials. Rule 1.530(e) points out that when an action has been tried before the court without a jury, a motion for rehearing is unnecessary to question on appeal the sufficiency of the evidence to support the judgment. We therefore conclude that the requirement of a hearing in a non-jury case is less compelling than in a jury trial. However, even if a hearing is required (we agree with the court in Alberger and find no such requirement in the rule), appellant's motion for rehearing contained no matters with merit that had not been previously argued to the court during trial.
AFFIRMED.
FRANK D. UPCHURCH, Jr., SHARP and COWART, JJ., concur.
NOTES
[1] In In Re Estate of Reed, 354 So.2d 864 (Fla. 1978), the supreme court pointed out that the standards established in Del Vecchio and its progeny have been supplanted by section 732.702, Florida Statutes (1975). While it can be argued that the statute is only applicable to probate matters, see Topper v. Stewart, 388 So.2d 1270 (Fla.3d DCA 1980), it is difficult to comprehend a rule which would hold the standard applicable to probate provisions of the agreement and inapplicable as to the other provisions. In the instant case, however, the trial court did not base its decision on the statute but held that there was "no fraud, no concealment, no coercion, no overreaching" and that the agreement was based on adequate consideration.