443 So.2d 337 (1983)
ELLIS FIRST NATIONAL BANK OF WEST PASCO, Appellant,
v.
Mariam C. DOWNING, Appellee.
No. 82-2472.
District Court of Appeal of Florida, Second District.
December 28, 1983.
Bertha P. Sanchez of Villanti & Sanchez, New Port Richey, for appellant.
Robert M. Focht, New Port Richey, for appellee.
SCHEB, Judge.
Appellant, Ellis National Bank of West Pasco, was named personal representative of the Estate of William Downing. The bank appeals an order denying its motion to strike the claim of Mariam C. Downing, who sought to take an elective share of her husband's estate. We find merit in appellant's position.
Mr. and Mrs. Downing met in 1978. Each had been previously married. On January 17, 1979, they signed an antenuptial agreement whereby they released all claims against each other's estates. Two days after the signing of the agreement, they married. Mr. Downing died about a year and a half later, and Mrs. Downing filed for an elective share of her husband's estate pursuant to section 732.201, Florida Statutes (1981). The bank interposed the Downings' antenuptial agreement and contended that by signing the agreement, Mrs. Downing had relinquished all claims against her husband's estate.
*338 After a nonjury trial the court concluded that Mrs. Downing had not validly relinquished her right to claim an elective share of the estate. This appeal by the bank ensued bringing into focus the validity of the antenuptial agreement.
In concluding that Mrs. Downing had not voluntarily executed the agreement, the trial judge based his ruling on the following factual findings: (1) the failure of Mr. Downing to make any provision for his wife; (2) the inadequacy of disclosure by Mr. Downing of his true assets; (3) the brief time between the first presentation of the agreement to Mrs. Downing and its execution; and (4) Mrs. Downing's lack of legal representation, her age [71], and her lack of sophistication. Considering the totality of circumstances and relying on this court's opinion in Lutgert v. Lutgert, 338 So.2d 1111 (Fla. 2d DCA 1976), the court determined that Mrs. Downing had not voluntarily entered into the agreement.
Historically, for an antenuptial agreement to be valid in the probate context, it was essential that it include a fair and reasonable provision for the wife, or be based on a fair disclosure of the husband's assets, or at least a showing that the wife had a general knowledge of the husband's assets. Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962). The rule was later extended to dissolution of marriage situations. Posner v. Posner, 233 So.2d 381 (Fla. 1970).
Subsequent to the supreme court's decisions in Del Vecchio and Posner, the legislature, in 1974, enacted section 732.702(2) pertaining to antenuptial agreements and the rights of a surviving spouse. That section, as amended in 1975, stipulates:
Each spouse shall make a fair disclosure to the other of his or her estate if the agreement, contract, or waiver is executed after marriage. No disclosure shall be required for an agreement, contract, or waiver executed before marriage.

(Emphasis supplied.) This statute was in effect when the Downings entered into their agreement. Consequently, the court's findings concerning the inadequacy of the provisions for the wife and the absence of a fair disclosure do not support the trial court's conclusion.
Further, the trial court erred in relying on Lutgert v. Lutgert, which deals solely with an antenuptial agreement in the context of a dissolution of marriage action. Weintraub v. Weintraub, 417 So.2d 629 (Fla. 1982). The statute overrides the guidelines of Del Vecchio in the context of a probate proceeding. Coleman v. Estate of Coleman, 439 So.2d 1016 (Fla. 1st DCA 1983). Notwithstanding the statutory provision, an antenuptial agreement may still be challenged. For example, an agreement may be set aside if one of the signatures was coerced or improperly obtained, or if one of the parties was incompetent at the time the agreement was signed. Estate of Roberts v. Roberts, 388 So.2d 216 (Fla. 1980).
Here, the trial court was concerned not only about the lack of provisions for the wife and unfair disclosure but also about the short period between the presentation and execution of the agreement, the lack of legal representation, and Mrs. Downing's lack of business sophistication. The evidence, however, disclosed that Mrs. Downing attended a business college for one year and was employed in various business and governmental offices during her working career. She testified that Mr. Downing had discussed the agreement with her five or six days before their marriage. The legal secretary for Mr. Bilirakis, the attorney who drafted the agreement, testified that she informed Mrs. Downing that she was free to seek counsel before signing the agreement. Mrs. Downing did not dispute this testimony. In fact, when asked at trial, "You signed the agreement voluntarily on January 17, 1979?" she replied, "Yes, I did."
The evidence does not indicate that Mrs. Downing was either coerced or incompetent to sign the agreement, or that she entered into the agreement involuntarily. Accordingly, we direct the trial court to *339 grant the bank's motion to strike the claims of Mrs. Downing filed against her husband's estate.
REVERSED.
OTT, C.J., and LEHAN, J., concur.