465 So.2d 1352 (1985)
Daniel B. HAHN, Jr., Appellant,
v.
Lorraine J. HAHN, Appellee.
No. 84-473.
District Court of Appeal of Florida, Fifth District.
March 21, 1985.
Frank J. Griffith, Jr., of Nabors, Potter, McClelland, Griffith & Jones, P.A., Titusville, for appellant.
Lorraine J. Hahn, in pro. per.
COBB, Chief Judge.
Appellant, Daniel B. Hahn, Jr., brings this timely appeal from a final judgment of *1353 dissolution of marriage which dissolved his marriage of approximately 33 years to Lorraine J. Hahn.
The evidence shows that the parties, Lorraine, age 52, and Daniel, age 58, have been married since 1950. The parties had three children, who are now all married and have attained their majorities. The husband earns approximately $30,000 per year and is employed as a personnel director for the Board of County Commissioners. The wife has a high school education, and attended approximately six months of business school. She also has a real estate license, which she acquired two years prior to the final hearing, but has not made any sales. At the time of the final hearing, she was employed part-time at Ivey's Department Store as a sales clerk.
Prior to the filing of the petition for dissolution of marriage, the parties, each being represented by independent legal counsel, entered into a property settlement agreement dated October 20, 1982. This agreement provided that the husband pay to the wife the sum of $700 per month as temporary alimony, continuing until the former marital home of the parties was sold or the wife remarried, whichever event occurred first. When the marital home was sold, all costs of the transaction would be deducted and the remaining net proceeds would be divided, with the husband receiving $5,000 in cash and the wife the remaining amount. Additionally, the wife was to receive the parties' 1977 Cordoba automobile, and the husband was to receive the parties' 1978 Toyota Celica. Also, the husband was to be responsible for the payment of $125 towards the wife's attorney's fee. The property settlement agreement also contained a clause whereby the parties agreed that they would waive any other rights they may have, including alimony.
The marital home was sold approximately a year from the date of the signing of the agreement, having netted a price of $122,000. There was an existing mortgage on the house of $22,000. The wife received over $29,000 in cash from the proceeds of the sale, and the husband received $2,000 in cash, apparently waiving $3,000. The wife also received a long-term mortgage of 20 years which pays $729 per month. In other words, the wife received all but $2,000 of the equity in the home.
On July 11, 1983, the husband filed a petition for dissolution of marriage with the Brevard County Circuit Court. In his petition he asked that the court adopt the property settlement agreement. The wife filed a reply to the petition on August 5, 1983, and also requested the agreement be adopted by the trial court in the event of dissolution. At the trial, the husband appeared represented by counsel, and the wife appeared on behalf of herself. During the trial, the court accepted into evidence the property settlement agreement, but found the portion of the agreement dealing with alimony to be unconscionable. The court added to the property settlement agreement an award of $50.00 per month alimony and required the husband to keep medical and hospitalization insurance for the wife. During the proceedings, the wife did not request any of these changes. The husband appeals, arguing that the trial court erred in its unsolicited amendment of the agreement of the parties.
The initial legal issue raised by this appeal is whether or not an agreement between two competent adults regarding alimony, when incorporated in a property settlement agreement, can be voided by the trial court in the absence of any allegations or proof of fraud, duress, deceit, coercion or overreaching on the part of the party obtaining the agreement. In regard to a pure property settlement agreement, the answer clearly is no. See Bockoven v. Bockoven, 444 So.2d 30 (Fla. 5th DCA 1983); Bubenik v. Bubenik, 392 So.2d 943 (Fla. 3d DCA 1980).
The basic rule of Florida law, of course, is that a spouse may waive her right to alimony of any type (although not *1354 child support, absent court approval) through an antenuptial or post-nuptial agreement. See Ivanhoe v. Ivanhoe, 397 So.2d 410 (Fla. 5th DCA 1981); Kirkconnell v. Kirkconnell, 222 So.2d 441 (Fla. 2d DCA 1969). Such a waiver does not contravene public policy. Kilpatrick v. McLouth, 392 So.2d 985 (Fla. 5th DCA 1981).
In Belcher v. Belcher, 271 So.2d 7 (Fla. 1972), the Florida Supreme Court held that agreements as to post-marriage[1] alimony are binding if there is compliance with the standards set forth in Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962). Del Vecchio emphasized the element of fairness between the parties at the time of execution of the agreement, and held:
... The basic issue is concealment, not the absence of disclosure, and the wife may not repudiate if she is not prejudiced by lack of information.
Id. at 21. Basically, the standards of Del Vecchio are those encompassed by consideration of the elements that we alluded to in Bockoven: fraud, duress, deceit, coercion and overreaching. See O'Connor v. O'Connor, 435 So.2d 344 (Fla. 1st DCA 1983).
In the instant case, there was no evidence of any of the foregoing elements at the time of the agreement between the parties. The wife did testify, without specifics, that she was "emotionally abused" at the time she signed the agreement, but courts have recognized that it is normal for parties in a dissolution proceeding to be emotionally upset. That emotion is not grounds to set aside an otherwise duly-executed property settlement agreement. See Bailey v. Bailey, 300 So.2d 294 (Fla. 4th DCA 1974).
We hold, therefore, that the appellee herein was bound by her agreement, and that the trial court erred by rejecting that agreement. Accordingly, we reverse and remand for entry of a judgment enforcing the agreement as written.
REVERSED and REMANDED.
FRANK D. UPCHURCH, Jr., Judge, concurring.
In view of the statement in the dissent that the wife did not ask the court to enforce the settlement agreement, I deem it necessary to emphasize the posture of the case at the time of the final hearing.
Daniel Hahn, Jr., appellant/husband, had alleged the execution of the agreement which was attached to his petition for dissolution and stated that "The parties have both been represented by independent legal counsel and desire the agreement to be adopted by this court in the event the court grants a dissolution of marriage." This allegation was specifically admitted by Lorraine Hahn, appellee/wife, in her reply. Lorraine was represented by counsel in the divorce suit. It is not clear from the record whether the same attorney represented her in the negotiation of the agreement. However, the agreement recited:
The Husband and Wife have been fully informed as to the status of the financial condition of each party and each has given full consideration thereto. The parties each fully understand the terms, conditions and provisions of this agreement, and have had an opportunity to obtain advice of independent legal counsel. The parties each believe the terms of this agreement to be fair, just, adequate and reasonable, and they freely and fully accept the provisions and conditions hereof.
There was no allegation whatsoever in any pleading that Lorraine was "emotionally *1355 upset," that she was ill-advised, abused, overreached or that the agreement was unconscionable, and no prayer or even suggestion that the court should disregard the agreement. There was only Lorraine's admission in her reply that she desired the agreement to be adopted should the dissolution be granted.
The reason Lorraine was not represented at the final hearing does not appear in the record, but since there were no issues formed by the pleadings, other than whether the marriage was irretrievably broken, counsel apparently saw no reason to attend.[1]
There may be instances when a court may perceive or even suspect a party is being deceived or ill advised, but the remedy is not to disregard an apparently valid contract. The answer to correct such abuse is to continue the hearing to give the abused party the opportunity to consult with counsel and to amend his or her pleadings if justice requires. The remedy is not to disregard the agreement of the parties simply because in the opinion of the trial judge it was not what he would have advised.
SHARP, Judge, dissenting.
An important issue in this case is whether or not the trial court has the power or duty to examine a settlement agreement entered into by a husband and wife in anticipation of divorce for basic fairness, before accepting it and incorporating it into the final dissolution decree. Under section 61.08, Florida Statutes (1983), the trial court is charged with the duty of achieving "equity and justice" between the parties. In my view, that duty would be violated if a trial court were required to adopt a settlement it thought was unfair and unconscionable to one of the parties. However, the district courts of appeal in Florida are in conflict and disarray on this important point.
The majority adopts the more stringent view that the trial court must accept and incorporate an unconscionable or unfair agreement if it was entered into by the parties without fraud, duress, deceit, coercion, and overreaching.[1] This view may have some merit, where a party seeks to attack a settlement which has been incorporated into a judgment. See Baker v. Baker, 394 So.2d 465 (Fla. 4th DCA), rev. denied, 402 So.2d 607 (Fla. 1981); Turner v. Turner, 383 So.2d 700 (Fla. 4th DCA), rev. denied, 392 So.2d 1381 (Fla. 1980); Mills v. Mills, 339 So.2d 681 (Fla. 1st DCA 1976); Moss-Jacober v. Moss, 334 So.2d 89 (Fla. 3d DCA 1976), cert. dismissed, 353 So.2d 676 (Fla. 1977). The public policies of res judicata, stare decisis, and final resolution of interminable dissolution litigation have great force and effect in this context.
However, those doctrines do not apply to an out-of-court settlement which has never been presented to a court of equity. That is precisely the time, in my view, that such an agreement should be reviewed for basic fairness to prevent an unconscionable result. See Dawkins v. Dawkins, 172 So.2d 633 (Fla. 2d DCA 1965). A private contract should not oust the courts of their jurisdiction to see that the state's interest in insuring adequate support for dependents has been protected. Posner v. Posner, 233 So.2d 381 (Fla. 1970).
*1356 The majority primarily relies on a post-judgment case in stating its rule,[2] and a post-nuptial settlement case which the court reversed with directions to apply the principles articulated in Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962).[3] I think the trial court in this case properly applied Del Vecchio.
The majority also cites cases dealing with antenuptial agreements. Ivanhoe v. Ivanhoe, 397 So.2d 410 (Fla. 5th DCA 1981), upheld the validity of an antenuptial agreement, but the opinion states insufficient facts to make the case a meaningful precedent.[4]Belcher v. Belcher, 271 So.2d 7 (Fla. 1972), also concerned the validity of an antenuptial agreement in the context of an award of temporary alimony. However, the court held that it was ineffective to bar temporary alimony and it questioned whether a complete waiver of alimony would be sustained in a final dissolution hearing.
In this case the trial court concluded the provisions made for the wife regarding her future support were so meager as to be unconscionable. At the time of the dissolution hearing she was fifty-two years old, unemployed, and had no medical insurance coverage. It had been a long term marriage (34 years), and she had been a good wife and mother. At the dissolution hearing, she was not represented by counsel.
She opposed and protested the dissolution on moral and religious grounds.[5] She did not ask the court to enforce the settlement agreement. When asked by the court why she had signed it, she said she had been emotionally upset and abused by the separation, and ill-advised by her attorney. Few life crises are as traumatic as divorce and separation. I fail to see why this trauma should not be given its due credence by the courts, especially where, as in this case, the trial court has made a finding of unconscionability. It certainly should not be cavalierly rejected as "normal." That does not comport with the realities of life.
Having found the settlement's provisions for the wife's support were so unfair and inadequate as to be unconscionable, the court added only two provisions thereto, which it felt were necessary to do basic equity. It required the husband to carry medical insurance for the wife. Contrary to his position on appeal the husband said he would do so and had no problem with this. And the court required "token" permanent alimony of $50.00 per month.
These additions, in the trial court's judgment, made the settlement just barely palatable for the wife, who normally would have been entitled to permanent alimony at a comfortable level. Her husband made $30,000 per year and she had no job or income. Pursuant to the agreement, she gave up any alimony in exchange for a $350.00 per month second mortgage payment for twenty years, and approximately $15,000.00 cash.[6]
Based on the record in this case, and the trial judge's finding of unconscionability, I think he was correct in amending the support provisions to do justice between the parties. See Maas v. Maas, 440 So.2d 494 (Fla. 2d DCA 1983), rev. denied, 451 So.2d 849 (Fla. 1984); O'Conner v. O'Conner, 435 So.2d 344 (Fla. 1st DCA 1983), (Ervin, J., dissenting); Fleming v. Fleming, 408 So.2d 238 (Fla. 4th DCA 1981); Risteen v. Risteen, 280 So.2d 488 (Fla. 3d DCA), cert. denied, 283 So.2d 563 (Fla. 1973).
*1357 In addition, there was also testimony that the wife did not know what her husband's income was, and that she did not understand that she was entitled to one-half the proceeds from the sale of the marital home because of her joint ownership. Under the rules set forth in Del Vecchio, an unfair agreement is not enforceable unless the party seeking to uphold it can show the other entered into it with "some understanding of her rights" and a "general and approximate knowledge" of her husband's property and income. Id. at 20. Cf. Bailey v. Bailey, 300 So.2d 294 (Fla. 4th DCA 1974); Costa v. Costa, 245 So.2d 123 (Fla. 2d DCA 1971); Zakoor v. Zakoor, 240 So.2d 193 (Fla. 4th DCA 1970). Since the husband failed to do this, I think the trial court properly amended the settlement agreement and its decision should be affirmed.
NOTES
[1] Cf. Blanton v. Blanton, 413 So.2d 453 (Fla. 5th DCA 1982); Young v. Young, 322 So.2d 594 (Fla. 4th DCA 1975), review denied, 333 So.2d 466 (Fla. 1976), in regard to prejudgment support.

FRANK D. UPCHURCH, Jr., J., concurs with opinion.
SHARP, J., dissents with opinion.
[1] Interestingly, counsel for the husband called Lorraine as his corroborating witness. Only Daniel and Lorraine testified. When asked if she were represented by counsel when she executed the agreement, Lorraine responded: "Incompetent counsel." This is the first time any dissatisfaction was indicated.
[1] Although I hesitate to quibble with semantics, it appears to me that there is by definition "overreaching" where there is an "unconscionable" agreement. Webster defines unconscionable as: "unscrupulous, excessive, unreasonable, shockingly unfair or unjust." Webster's New Collegiate Dictionary 1264 (150th Anniversary Edition, 1973).
[2] See Bockoven v. Bockoven, 444 So.2d 30 (Fla. 5th DCA 1983).
[3] See Bubenik v. Bubenik, 392 So.2d 943 (Fla. 3rd DCA 1980).
[4] Antenuptial agreements probably should not be governed by the same principals as post-nuptial agreements despite Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962), and its progeny. The Legislature apparently agrees, at least, regarding rights of inheritance. See § 732.702(2), Fla. Stat. (1983).
[5] She wept and she prayed but was powerless to halt the progress of the no-fault dissolution.
[6] One-half of the proceeds from the marital residence were, in fact, hers already due to her joint ownership, as the lower court observed.