DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GILBERT E. HALL,**
Appellant,

v.

**SUSAN B. HALL,**
Appellee.

No. 4D13-2897

[August 12, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Timothy L. Bailey, Judge; L.T. Case No. FMCE 11013362.

Virginia R. Vetter, Tampa, and Susana Rice Roque, Miami, for appellant.

Linda M. Jaffe of Law Offices of Linda M. Jaffe, Fort Lauderdale, for appellee.

KLINGENSMITH, J.

Gilbert E. Hall ("Former Husband") appeals the trial court's final judgment of dissolution of marriage terminating his marriage to Susan B. Hall ("Former Wife"). Former Husband raises several issues on appeal. We write to address his argument that the trial court erred by ruling a contested marriage settlement agreement ("MSA") was valid and enforceable and his contention that the trial court abused its discretion by denying his motion to amend. Because we find that the MSA was valid, yet Former Husband was improperly denied the opportunity to amend his answer to Former Wife's petition for dissolution of marriage, we reverse and remand so Former Husband may file an amended answer consistent with this opinion. We affirm the final judgment in all other respects.

Former Husband's initial answer to Former Wife's petition did not request any affirmative relief. After the answer was filed, the parties met in December 2012 for mediation with their respective attorneys and a mediator. During mediation, the parties remained in separate rooms while the mediator went back and forth between them.

The mediation resulted in a two-page, handwritten marriage settlement agreement ("MSA"), which was drafted by Former Husband's attorney. The substantive portion of the agreement appears entirely on the first page of the document:

> This settlement agreement is entered into on Dec. 20, 2012, as follows:
>
> The parties agree to equally divide the net proceeds from the sale, except that Husband shall receive $6,000 less as consideration for Wife's payments of certain marital expenses that were necessary.
>
> The parties agree that the Florida prepaid college plan on behalf of their daughter Samantha shall be used exclusively for education/housing expenses. In the event that a refund (whether full or partial), the parties agree to equally divide same.
>
> [Crossed-out paragraph].
>
> The parties agree that each shall retain any and all assets or debts that are in their respective names, including but not limited to all of Wife's credit cards, Husband's bankruptcy debt (Chapt. 13), each parties' 2012 taxes due (both shall file separately); Wife's jewelry and the cars that they drive.

The first page also contains the style of the case, and was initialed by both Former Husband and Former Wife. The second page reflects the signatures of both parties, their attorneys, and the mediator.

After the mediation, Former Husband's attorney repeatedly contacted Former Wife's attorney and claimed that she had forgotten to present an additional page of her draft agreement for Former Wife to consider. Former Husband's attorney claimed that this additional page represented what was supposed to be the first page of the MSA. She requested that Former Wife's attorney confirm that the alleged first page represented the parties' intended agreement and asked that Former Wife sign the page.

This alleged first page contained additional terms that assigned Former Husband the entire value of Former Wife's tax sheltered annuity as of September 2011 and certain percentages of Former Wife's retirement accounts. The page did not contain the signatures or initials of either party, a date, or the style of the case.

2

The record does not reflect that Former Wife's attorney ever responded to the requests made by Former Husband's attorney, and, in early February, Former Wife filed the two-page MSA with the trial court. Shortly thereafter, Former Husband filed a motion for partial declaration and leave to amend his answer, requesting an order declaring that the two-page MSA was not complete, and that the purported three-page MSA accurately reflected the parties' intended agreement. Former Husband also attached his amended answer wherein he requested affirmative relief.

Specifically, Former Husband raised issues in his amended answer pertaining to timesharing and his need for child support, alimony, and attorney's fees. He also sought equitable distribution of certain corporate interests, retirement accounts, automobiles, bank accounts, furnishings, and other property known and unknown, with the exception of the marital home that already had been sold.

At the hearing on Former Husband's motion, Former Wife testified that she never had seen the newly-presented alleged first page of the MSA until after the mediation and that she never would have agreed to its terms. Former Husband testified that "[he] initialed [the MSA] where [he] was asked to after [he] read it." He also stated: "If I agreed on it, I initialed it." Former Husband's explanation for why his initials were missing from the alleged first page amounted to "I just didn't. That's all." Neither Former Husband nor his attorney could provide the court with the original alleged first page during the hearing, and the mediator testified that he had no memory or documentation relating to the parties' mediation.

Based on this evidence, the trial judge denied Former Husband's motion for partial declaration and leave to amend, stating:

> The Husband's request that I declare the two-page document to be incomplete is denied.
>
> The settlement agreement filed with the Court by Wife's attorney on February 8th states at the top – it is a two-page document. It's actually one single piece of paper front and back. The back is just the signature, signature page. But it states at the top "This settlement agreement is entered into on 12/20/12". Not this partial agreement. "This agreement".
>
> And the Court just finds it to be illogical that you would say "this agreement" on the second page of the agreement.

3

And you wouldn't say this settlement agreement on the first page.

No one knows where this first page is. Husband's counsel doesn't know. Husband doesn't know. Wife's counsel doesn't know. Wife doesn't know. No one knows where the first page is.

The first page of the settlement agreement that's actually in the court file states on its face "The parties agree that each will keep all the assets titled in their respective names". There's nothing ambiguous about that. It doesn't say except for what we've already cited on Page 1, or except for those assets we already discussed.

Just based on the evidence that came out at this hearing, the Court is going to deny Husband's request that I find the two-page document that's in the court file to be incomplete.

The Court is also going to deny Husband's request that he be allowed to file a counter-petition today on a case that's 18 months old and we're 30 days from trial.

Former Husband filed a motion to vacate or reform this judgment, which was denied. Ultimately, the trial court issued a short final judgment of dissolution of marriage which stated: "[t]he parties entered into a Mediation Agreement dated December 20, 2012, attached as 'Exhibit A' which settles and resolves the issues associated with their marriage."

On appeal, Former Husband argues that the trial court erred by ruling that the two-page MSA filed by Former Wife was a complete and valid MSA and claims that the trial court abused its discretion by denying his motion to amend his answer.

I. The Two-Page MSA was a Valid, Enforceable Agreement

In *Casto v. Casto,* 508 So. 2d 330, 333-34 (Fla. 1987), the Florida Supreme Court established two grounds for setting aside or modifying a marriage settlement agreement:

First, a spouse may set aside or modify an agreement by establishing that it was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching. *Masilotti v. Masilotti,* 158 Fla. 663, 29 So. 2d 872 (1947); *Hahn* [*v. Hahn,*

4

465 So. 2d 1352 (Fla. 5th DCA 1985)]*; O'Connor* [*v. O'Connor,* 435 So. 2d 344 (Fla. 1st DCA 1983)]. *See also Del Vecchio v. Del Vecchio,* 143 So. 2d 17 (Fla. 1962).

The second ground to vacate a settlement agreement contains multiple elements. Initially, the challenging spouse must establish that the agreement makes an unfair or unreasonable provision for that spouse, given the circumstances of the parties. *Del Vecchio,* 143 So. 2d at 20. To establish that an agreement is unreasonable, the challenging spouse must present evidence of the parties' relative situations, including their respective ages, health, education, and financial status. With this basic information, a trial court may determine that the agreement, on its face, does not adequately provide for the challenging spouse and, consequently, is unreasonable. In making this determination, the trial court must find that the agreement is "disproportionate to the means" of the defending spouse. *Id.* This finding requires some evidence in the record to establish a defending spouse's financial means. Additional evidence other than the basic financial information may be necessary to establish the unreasonableness of the agreement.

Once the claiming spouse establishes that the agreement is unreasonable, a presumption arises that there was either concealment by the defending spouse or a presumed lack of knowledge by the challenging spouse of the defending spouse's finances at the time the agreement was reached. The burden then shifts to the defending spouse, who may rebut these presumptions by showing that there was either (a) a full, frank disclosure to the challenging spouse by the defending spouse before the signing of the agreement relative to the value of all the marital property and the income of the parties, or (b) a general and approximate knowledge by the challenging spouse of the character and extent of the marital property sufficient to obtain a value by reasonable means, as well as a general knowledge of the income of the parties. The test in this regard is the adequacy of the challenging spouse's knowledge at the time of the agreement and whether the challenging spouse is prejudiced by the lack of information. *Id. See Belcher v. Belcher,* 271 So. 2d 7 (Fla. 1972); *Del Vecchio.*

As reflected by the above principles, the fact that one party to the agreement apparently made a bad bargain is not a sufficient ground, by itself, to vacate or modify a settlement agreement. The critical test in determining the validity of marital agreements is whether there was fraud or overreaching on one side, or, assuming unreasonableness, whether the challenging spouse did not have adequate knowledge of the marital property and income of the parties at the time the agreement was reached. A bad fiscal bargain that appears unreasonable can be knowledgeably entered into for reasons other than insufficient knowledge of assets and income. There may be a desire to leave the marriage for reasons unrelated to the parties' fiscal position. *If an agreement that is unreasonable is freely entered into, it is enforceable. Courts, however, must recognize that parties to a marriage are not dealing at arm's length, and, consequently, trial judges must carefully examine the circumstances to determine the validity of these agreements.*

*Id.* (emphasis added) (footnote omitted).

Regarding the first ground for setting aside a marriage settlement agreement, Former Husband has not presented any evidence that Former Wife or her attorney engaged in any "fraud, deceit, duress, coercion, misrepresentation, or overreaching" during the mediation, or after. *Id.* at 333. Rather, Former Husband's position is that his attorney inadvertently forgot to present the alleged first page to Former Wife for her to consider.

With respect to the second ground, it is difficult to ascertain from this record whether the agreement "makes an unfair or unreasonable provision" for appellant, given the parties' relative circumstances. *Id.* The main contention between the parties appears to be the division of certain accounts held in Former Wife's name. Former Husband's financial affidavit states that he made $64,299.23 in 2010 compared with $62,821.32 for Former Wife. He also claims that Former Wife has $94,774.08 in a TSA Quinta flex-individual account, $58,516.76 in a TSA ING retirement plus individual account, and $12,672.13 in a TSA LSW account.

Former Wife's financial affidavit does not provide a total yearly income, but does show that her monthly expenses exceeded her monthly income. Regarding her retirement accounts, Former Wife did not provide amounts and merely stated that they were "TBD." The alleged first page proffered by Former Husband awards him portions of some of these accounts, which

6

Former Wife contends she never would have agreed to if she had been presented with the document.

Thus, the record reflects that Former Husband wants to assign certain values to Former Wife's retirement accounts which Former Wife has not confirmed. These figures are contained in Former Husband's financial affidavit, which he himself filled out, but are not corroborated by bank statements or any other official documentation. All that is clear from the record is that Former Wife does not agree with the percentages of the accounts Former Husband claims he is entitled to as reflected on the alleged first page.

As such, Former Husband has not demonstrated that the two-page MSA filed by Former Wife was unfair or unreasonable because he has not "present[ed] evidence of the parties' relative situations" which would permit a court to "determine that the agreement, on its face, does not adequately provide for the challenging spouse and, consequently, is unreasonable." *Id.*

As mentioned above, the three-page MSA, which Former Husband maintains was the intended agreement, contains two substantive pages and one signature page. Thus, Former Husband is essentially asking this court to find, based solely on his assertion and no other evidence, that his attorney forgot to present to Former Wife *one-half* of the intended agreement's substantive portions but did not realize it until the next day. The evidence presented to the trial court contradicts this claim.

Unlike the first page of the two-page MSA filed by Former Wife, the alleged first page of the purported three-page MSA proffered by the Former Husband lacks both the style of the case and the parties' initials. Moreover, the first page of the two-page MSA begins with the heading: "This settlement agreement is entered into on Dec. 20, 2012, as follows." As the trial court noted, it would be illogical, based on the evidence presented at the hearing, to find that the alleged first page now proffered by the Former Husband constituted the true first page of the agreement when it lacked these attributes.

The two-page MSA accepted by the trial court contains the style of the case, a clear heading, the parties' initials, the signature page, and addresses the parties' financial accounts by stating that they "agree that each shall retain any and all assets or debts that are in their respective names . . . ." In light of these facts, and because Former Husband has not presented any evidence to support his position that his purported first page inadvertently was omitted during the mediation, the trial court did

not err by ruling that the two-page MSA filed by Former Wife was a valid, enforceable agreement.

## II. Former Husband Should Have Been Permitted to Amend

The trial court denied Former Husband's motion to amend his answer because eighteen months had passed since Former Wife filed her petition and the case was thirty days from trial. We review a trial court's ruling on a motion to amend for an abuse of discretion. *Vaughn v. Boerckel*, 20 So. 3d 443, 445 (Fla. 4th DCA 2009).

"Refusal to allow an amendment is an abuse of the trial court's discretion 'unless it clearly appears that allowing the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile.'" *Id.* (quoting *Dieudonne v. Publix Super Mkts., Inc.,* 994 So. 2d 505, 507 (Fla. 3d DCA 2008)).

The record reflects that Former Husband filed his motion to amend after Former Wife already had filed the two-page MSA with the trial court. This was Former Husband's first request to amend his answer, and there was no allegation or finding that he was abusing the privilege to amend. Additionally, the trial court made no express finding that allowing Former Husband leave to amend one month before the scheduled hearing would result in prejudice to Former Wife.

The two-page MSA addresses the proceeds from the sale of the marital home, the minor child's Florida Prepaid tuition funds, and states that the parties shall "retain any and all assets or debts that are in [the parties'] respective names, including but not limited to all of [Former] Wife's credit cards, [Former] Husband's bankruptcy debt . . ., each parties [sic] 2012 taxes due . . .; [Former] Wife's jewelry and the cars that they drive." Former Husband's amended answer raised issues concerning child support, alimony, time-sharing, attorney's fees, and equitable distribution of corporate interests, assets, retirement accounts, automobiles, bank accounts, furnishings, and other property known and unknown.

The parties' valid two-page MSA specifically states that they each shall retain the assets which are in their respective names, and is therefore dispositive as to those items. However, as the two-page MSA does not address child support, alimony, time-sharing, or attorney's fees, it is clear that the parties had not yet come to an agreement concerning these issues. Thus, allowing Former Husband leave to amend would not have been futile.

8

Because (1) it is not clear that allowing Former Husband leave to amend would have prejudiced Former Wife; (2) Former Husband did not abuse the privilege to amend; and (3) allowing him leave to amend would not have been in vain, the trial court abused its discretion by denying Former Husband leave to amend his answer.

Therefore, we remand this case to the trial court with instructions to allow Former Husband to file his amended answer in accordance with this opinion. We affirm in all other respects.

*Affirmed in part; Reversed and Remanded in part.*

CIKLIN, C.J., and FORST, J., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

9