PER CURIAM.
Goldie Topper, as personal representative of Sarah Liptzen’s estate, appeals from a judgment in favor of Sam Liptzen’s estate following appellate remand for further proceedings on appellant’s complaint for an accounting. Topper v. Stewart, 412 So.2d 381 (Fla. 3d DCA), rev. denied, 419 So.2d 1201 (Fla.1982) (Topper II). For reasons more fully detailed below, we remand once again for further proceedings.
On June 26, 1963, Sam and Sarah, both of whom had been married previously and had grown children, entered into a prenuptial agreement. Paragraph 6 thereof provided:
6. The said SARAH GROSS, agrees that she has no rights, including the *374 right of dower, in any real estate now owned by SAM LIPTZEN. However, said SAM LIPTZEN agrees that any property he purchases after the marriage of said parties, that the same be placed jointly in the names of said parties as tenants by the entirety, subject to all the incidents of ownership as such tenants by the entirety.
Sarah additionally agreed therein to limit her claims to Sam’s estate to the sum of $10,000. Sam and Sarah were married on July 7, 1963. During the marriage, Sam purchased more than $300,000 worth of stocks in his name alone, which assets ultimately became part of Sam’s estate, the value of which was nearly $434,000 at his death. Sam died October 26, 1976 and Sarah died November 16, 1976.
A declaratory judgment action regarding the parties’ agreement resulted in a final judgment upholding the validity of the agreement, which was affirmed on appeal. Topper v. Stewart, 388 So.2d 1270 (Fla. 3d DCA 1980), rev. denied, 397 So.2d 779 (Fla.1981) (Topper I). This court’s opinion stated that the question of whether Sam failed to place certain real and personal property acquired during the marriage in joint names as required by the agreement should be determined by the probate division of the circuit court.
Meanwhile, in the probate division, appellant filed a statement of claim on April 12, 1977 in proceedings in re Sam’s estate. These proceedings resulted in the second Topper appeal, supra, and remand for an accounting by appellees. On February 23, 1983 judgment was entered by the trial court which found, after an evidentiary hearing, that because funds for the properties purchased by Sam alone during the marriage were derived from real estate owned by Sam prior to the marriage and referred to in the agreement, appellant was limited under the agreement to a recovery of $10,000, plus interest, although account-ings were ordered per this court’s mandate. This appeal followed denial of post-trial motions.
After seven years of litigation, the ultimate issue in this case remains whether the property acquired by Sam in his name alone properly belongs to his heirs as a substitution for the real estate he owned at the time the prenuptial agreement was drafted or whether this property acquired after the marriage should have been placed in the joint names of Sam and Sarah. The presumption, as expressed in Topper I, is that property acquired during a marriage is held jointly. In this case there exists a prenuptial agreement which removes certain property from that presumption. The appellees argue that other, different property should also be excluded from that presumption because it is a mere replacement for property validly excluded. Whether this property is in fact a substitute for the real estate is a factual question which appellees bear the burden of proving. On the basis of the record before us, the appellees have not yet proven this. Interrogatories directed to the precise issue of substitution have not been answered by the appellees. The sole testimony on this question is limited in its reach.[1] There has been no evidence offered at all to explain the source of the more than $196,000 used to purchase numerous securities between January and August, 1967.[2] Without more than is apparent from this record, we find no basis for the trial court’s ruling that a substitution in fact took place.
In order to provide an answer to an issue which has consumed some seven years of judicial time and effort without *375 any resolution, we again, as we did in Topper II, order an accounting of Sam’s assets. By this we mean a full financial history of the real estate assets; when each piece of property was purchased, when it was sold, and how much money was realized from the sale. This type of accounting, the easiest method of proving appellees’ substitution defense, has never been done, and the trial court, even in its most recent order, has not ordered it. Real estate transactions are the subject of public records; this information is available. The results of this formal accounting should establish whether the securities replaced the real property. While we agree with the trial court that a testator may change or substitute assets in order to augment the value of an estate being left for heirs, even when those assets are the subject of a prenuptial agreement, when a spouse has waived valuable rights in one specifically enumerated type of asset and then another, completely different asset comprises the entire estate after the testator’s death, we believe that it is incumbent upon the heirs to prove the substitution.
In the event that the accounting shows that Sam used other funds, not connected to the sale of the real estate, to finance some of the stock purchases, Sarah’s estate would be entitled to her elective share of those particular assets. The trial court found, and the attorney who drafted the prenuptial agreement so testified, that the prenuptial agreement dealt only with the real property owned before the marriage. It follows, therefore, that Sarah did not waive her right to claim an elective share of personal property existing before the marriage and then whatever was substituted for that personal property after the marriage.
This case has been before this court twice before and both times it has been remanded for a determination of whether the property acquired by Sam during the marriage should have been placed in joint names or whether it was Sam’s alone. We remand yet again, this time explicitly requiring that appellees conduct a full accounting of the real estate from the date of acquisition to the date of sale to the date of purchase of the securities. We trust that the results will end this interminable litigation between these parties.
Reversed and remanded with directions.

. Carl Stewart, Sam’s son-in-law, testified that the proceeds of the sale of one piece of property in 1965 were used to purchase stock. Mr. Stewart did not testify as to the amount gained from the sale and then reinvested or even the approximate date of the sale, even though Mr. Stewart was Sam’s employee and went to the closing on this property. Moreover, because of his status as an interested party, Mr. Stewart's testimony, standing alone, is difficult to treat as dispositive.

. The only accounting supplied by the appellees was yet another probate accounting, this one done by a certified public accountant, which simply restated the list of securities held by Sam when he died.