512 So.2d 271 (1987)
Nicolas CLADIS, a/k/a Nicholas Cladis, a/k/a Nikolas Cladis, a/k/a Nikolas Kladis, Appellant,
v.
Elaine Foulkes CLADIS, a/k/a Elaine E. Kladis, Appellee.
Nos. 85-424, 85-425.
District Court of Appeal of Florida, Fourth District.
September 2, 1987.
Rehearing Denied October 2, 1987.
*272 William H. Stolberg of Shankweiler and Stolberg, Fort Lauderdale, for appellant.
Wynne M. Casteel, Jr., of Cabot, Wenkstern & Casteel, Fort Lauderdale, for appellee.
WALDEN, Judge.
The husband appeals from a final judgment in a dissolution of marriage action. The trial court made extensive findings and thereupon set aside the antenuptial agreement, equitably divided the assets between the parties, and awarded the wife permanent periodic alimony, lump sum alimony and attorney fees. We reverse the ruling as to the antenuptial agreement and, while we affirm the awards of alimony and attorney fees, we remand as to the question of the amounts of alimony so that the trial court may have the opportunity to reconsider the amounts of such alimony awards, as part of one overall scheme of remedies, in light of the fact that our action in upholding the antenuptial agreement serves to eliminate the distribution of assets to the wife as contained in the appealed final judgment. See Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla. 1980).
The trial court disposed of the antenuptial agreement with these findings:
On November 3, 1976 the parties entered into an Ante-Nuptial Agreement with neither party being represented by counsel. The Court finds that the Agreement is more of a disclaimer regarding inheritance and not in anticipation of divorce, and that the Agreement is basically unfair and inequitable to the Wife. Further, the document does not address itself to support or lump sum alimony and is of limited scope and, therefore, has no legal effect in this cause.
An examination of the agreement reveals that it is typed, three pages in length, signed by the parties and notarized. It is patently "home made" and contains a considerable amount of boilerplate language. Regardless, the intention of the document and of the parties is manifest. It is repeated *273 over and over again that the prospective bride is waiving and relinquishing all rights to the property of Nicolas Cladis whether now owned or hereafter acquired. As the trial court observed, the agreement is limited in that it does not deal with or mention alimony or the husband's duty to support. Neither does it mention attorney fees.
The wife says the husband furnished the form for the agreement through a friend of his. The husband says the wife obtained the form from a friend of hers who was a legal secretary. It is undisputed that neither party was represented by counsel and that the wife actually typed the agreement. Also, a minimum of five days elapsed between the time that the wife completed the typing and the time she signed. Further, three weeks elapsed between the signing of the agreement and the marriage. The husband had to have a friend read the agreement to him because of his poor command of English. The parties had lived together for some years beforehand and the wife kept books for the husband's businesses prior to marriage. It is conceded that there was a full and complete disclosure of all the assets and that the wife knew as much about the husband's financial condition as he did.
The Supreme Court of Florida has recently addressed and clarified the grounds on which a trial court may vacate a settlement agreement in a final dissolution proceeding in Casto v. Casto, 508 So.2d 330 (Fla. 1987). Although Casto involves a postnuptial agreement, we think the principles also apply to an antenuptial agreement. We quote, beginning at page 2330:
In this opinion, we will attempt to clarify the grounds on which a trial court may vacate or modify a postnuptial agreement in a final dissolution proceeding. Presently, some district court judges disagree on the principles for enforcing these agreements. See Hahn v. Hahn, 465 So.2d 1352 (Fla. 5th DCA 1985); O'Connor v. O'Connor, 435 So.2d 344 (Fla. 1st DCA 1983).
Postnuptial agreements regarding alimony and marital property are properly enforceable in dissolution proceedings. There are, however, two separate grounds by which either spouse may challenge such an agreement and have it vacated or modified.
First, a spouse may set aside or modify an agreement by establishing that it was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching. Masilotti v. Masilotti, 158 Fla. 663, 29 So.2d 872 (1947); Hahn; O'Connor. See also Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962).
The second ground to vacate a settlement agreement contains multiple elements. Initially, the challenging spouse must establish that the agreement makes an unfair or unreasonable provision for that spouse, given the circumstances of the parties. Del Vecchio, 143 So.2d at 20. To establish that an agreement is unreasonable, the challenging spouse must present evidence of the parties' relative situations, including their respective ages, health, education, and financial status. With this basic information, a trial court may determine that the agreement, on its face, does not adequately provide for the challenging spouse and, consequently, is unreasonable. In making this determination, the trial court must find that the agreement is "disproportionate to the means" of the defending spouse. Id. This finding requires some evidence in the record to establish a defending spouse's financial means. Additional evidence other than the basic financial information may be necessary to establish the unreasonableness of the agreement.
Once the claiming spouse establishes that the agreement is unreasonable, a presumption arises that there was either concealment by the defending spouse or a presumed lack of knowledge by the challenging spouse of the defending spouse's finances at the time the agreement was reached. The burden then shifts to the defending spouse, who may rebut these presumptions by showing that there was either (a) a full, frank disclosure to the challenging spouse by the defending spouse before the signing *274 of the agreement relative to the value of all the marital property and the income of the parties, or (b) a general and approximate knowledge by the challenging spouse of the character and extent of the marital property sufficient to obtain a value by reasonable means, as well as a general knowledge of the income of the parties.
The test in this regard is the adequacy of the challenging spouse's knowledge at the time of the agreement and whether the challenging spouse is prejudiced by the lack of information. Id. See Belcher v. Belcher, 271 So.2d 7 (Fla. 1972); Del Vecchio.[1]
As reflected by the above principles, the fact that one party to the agreement apparently made a bad bargain is not a sufficient ground, by itself, to vacate or modify a settlement agreement. The critical test in determining the validity of marital agreements is whether there was fraud or overreaching on one side, or, assuming unreasonableness, whether the challenging spouse did not have adequate knowledge of the marital property and income of the parties at the time the agreement was reached. A bad fiscal bargain that appears unreasonable can be knowledgeably entered into for reasons other than insufficient knowledge of assets and income. There may be a desire to leave the marriage for reasons unrelated to the parties' fiscal position. If an agreement that is unreasonable is freely entered into, it is enforceable. Courts, however, must recognize that parties to a marriage are not dealing at arm's length, and, consequently, trial judges must carefully examine the circumstances to determine the validity of these agreements... .
We are concerned about the trial court's finding as a ground to vacate the agreement that the wife "did not have competent assistance of counsel." This is an erroneous basis for setting aside the agreement. This Court has expressly held that incompetent legal advice is not a basis to vacate an agreement in a dissolution proceeding. Cowen[2] (wife consulted with two attorneys and then alleged she did not have competent counsel). See also Bubenik.[3]
To hold that competent counsel is essential for a valid property settlement agreement is inconsistent with our prior holding that a complaining spouse need not have legal counsel for a valid agreement. Del Vecchio; Cowen.

While the wife raised affirmative defenses such as fraud, duress, overreaching, etc., see Casto, 508 So.2d at 333, the trial court did not find that such defenses were established. The record does not reflect that the court erred in this and, moreover, the failure of the trial court to find that such defenses were established was not raised by cross appeal, or otherwise.
The trial court did find that "the agreement is basically unfair and inequitable to the Wife" and we certainly agree under the facts of this case with reference to the husband's property. However, this finding alone is not enough to support a decision to set aside the agreement. As reflected in Casto, 508 So.2d at 333, once it is established that the agreement is unreasonable, "a presumption arises that there was either concealment by the defending spouse or a presumed lack of knowledge by the challenging spouse of the defending spouse's finances at the time the agreement was reached." Here, as earlier stated and conceded, the wife had full and complete knowledge of the husband's finances. Thus this presumption was rebutted and it fails.
Finally, the trial court supported its decision to set aside by finding, "the document does not address itself to support or lump sum alimony and is of limited scope and, therefore, has no legal effect in this cause." We do not agree that a limited contract is unenforceable. We are of the opinion that the contract terms under which the wife waived any claim to the *275 husband's property are valid and that, not having waived other of her claims such as support and alimony, she is now free to maintain such claims. See Scott v. Scott, 303 So.2d 683 (Fla. 4th DCA 1974); Topper v. Stewart, 449 So.2d 373 (Fla. 3d DCA 1984); Posner v. Posner, 237 So.2d 186 (Fla. 3d DCA 1970).
In our opinion the remaining appellate points do not merit discussion.
There is one final caution that we mention for consideration by the trial court upon remand. It is basic that the tool of lump sum alimony is provided by § 61.08, Florida Statutes (1985). The proper application of lump sum alimony for different purposes under differing circumstances is the subject of much case law. One of the applications of lump sum alimony is to supply a means to effectuate equitable distribution of property. Canakaris. It is our view that while the wife here may be awarded lump sum alimony in the discretion of the trial court, she may not be awarded lump sum alimony in order to accomplish equitable distribution of the husband's property because to do so would be violative of the terms and spirit of the antenuptial agreement.
We affirm in part; reverse in part; and remand for further proceedings consistent herewith.
ANSTEAD and DELL, JJ., concur.
NOTES
[1] The standards set forth for antenuptial agreements in Del Vecchio were subsequently approved for postnuptial agreements in Belcher.
[2] Cowen v. Cowen, 95 So.2d 584 (Fla. 1957).
[3] Bubenik v. Bubenik, 392 So.2d 943 (Fla. 3d DCA 1980).