LEHAN, Acting Chief Judge.
In this dissolution of marriage action the ex-husband appeals the trial court’s award to the ex-wife of three-eighths of the marital home which had been purchased by the husband during the marriage and held in his name as trustee. While we agree with the husband that the trial court erred in disregarding the antenuptial agreement which had been entered into between the parties and we reverse the award, we do not agree with the husband’s construction of the agreement which he contends should entitle him to 100% of the home upon the dissolution. We agree with the contention of the wife on cross-appeal that she is entitled to 50%.
Following the purchase of the home with the husband’s separate funds which had been owned by him at the time of the marriage, the home was renovated with such funds, principally through his labor. Both parties apparently agree that fee simple title was in the husband. See § 689.07, Fla.Stat. (1989) (“Every deed ... in which the word[ ] ‘trustee’ ... [is] added to the name of the grantee, and in which no beneficiaries are named nor the nature and purposes of the trust ... shall grant ... a fee simple estate_”). He contends the ante-nuptial agreement entitles him to the entire home because the agreement provides in its paragraph 1 that neither husband nor wife may claim the nonmarital property of the other.
The wife contends the antenuptial agreement entitles her to one-half because the home was acquired during the marriage, and the agreement provides in its paragraph 2 that property acquired during the marriage is to be held in a joint tenancy between the husband and wife and upon the dissolution of the marriage is to be divided evenly.
The husband’s rebuttal is that under paragraph 7 of the agreement each of them “is to have the full right to own, control, and dispose of her or his separate property” as though the marriage did not exist without the necessity of the other joining; under paragraph 6 each may dispose of her or his property as he or she sees fit; and under paragraph 10 each releases all right, title and interest in the nonmarital property of the other. His rebuttal arguments are to the effect that under those paragraphs he had the right to substitute for his non-marital property other property purchased in exchange for nonmarital property and retain a nonmarital status for the substitute property under paragraph 1.
The trial court determined that the agreement was inherently conflicting and in its order said it “chooses to resolve this conflict by awarding the Wife lump sum alimony” pursuant to which she was awarded the foregoing three-eighths interest. We conclude that that determination and resolution were erroneous.
The agreement is not argued by either party, or shown, to have been invalid. Nor was it found invalid by the trial court. We are therefore constrained to disagree with the trial court that the agreement does not control the disposition of the home upon the dissolution of the marriage. See Porter v. Porter, 593 So.2d 1120 (Fla. 4th DCA 1992). We are also constrained by principles of contractual construction to disagree with the husband’s contention and rebuttal arguments. We must agree with the contention of the wife, for the reasons explained below.
Paragraph 1 of the agreement provides in pertinent part, “The property now *131 owned by Bruce and Jacqueline now standing in their respective names ... shall remain the sole property of each.... All such property ... shall be ‘nonmarital property’.... As such, neither party shall have any right in the other’s nonmarital property, either now during their marriage or upon a dissolution of their marriage.” (Emphasis added.)
Paragraph 2 of the agreement provides, “All property acquired during the marriage of Bruce and Jacqueline shall be taken in joint tenancy between the two of them and upon a dissolution of their marriage shall be divided equally between them (each a 50% share of the property).” (Emphasis added.)
The plain meaning of paragraphs 1 and 2 is that, while the wife will have no interest in the property of the husband owned at the time of the agreement, she is to be entitled to one-half of all property acquired during the marriage. Paragraph 2 did not exclude from its operation property acquired by the husband with property he owned at the time of the agreement. It did not distinguish between property acquired with nonmarital or marital funds. The sole criterion for the operation of that paragraph was whether property was acquired during the marriage. It is undisputed that the marital home was acquired during the marriage.
As to the husband’s rebuttal arguments, no provision of the agreement provides that the husband could substitute for non-marital property other property purchased in exchange for nonmarital property and then retain a nonmarital status for the substitute property as an exception to paragraph 2. Paragraphs 7 and 6 essentially provide only that the husband would retain control of his nonmarital property. He exercised that control when he used nonmari-tal property to purchase the marital home during the marriage and thereby subject the marital home to the provisions of paragraph 2. That he did not except from paragraph 2 property purchased with non-marital funds was, we must conclude, his decision. That he purchased the home with nonmarital funds was, we must also conclude, his subsequent decision. Paragraph 10 provides no more than that the wife releases all right in property of the husband she would receive by virtue of the marriage under the laws of any state; her one-half of the home which was acquired during the marriage was received by virtue of paragraph 2, not by virtue of the marriage under the laws of a state.
If the husband’s apparent decision not to except from paragraph 2 property purchased with nonmarital funds was unwise in hindsight, that is not something from which a court of law is entitled to protect him. We must construe the contract in accordance with its plain meaning. See Acceleration Nat’l Service Corp. v. Brickell Financial Services Motor Club, Inc., 541 So.2d 738, 739 (Fla. 3d DCA), rev. denied, 548 So.2d 662 (Fla.1989) (“In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls.”). See also A. C. Associates v. First Nat’l Bank of Florida, 453 So.2d 1121, 1129 (Fla. 2d DCA 1984) (“The role of the courts is not to make an otherwise valid contract more reasonable or less unreasonable from the standpoint of one contracting party.”).
It is fundamental that adult persons suffering from no disabilities have complete freedom of contract.... [T]he court will not interfere with the facility of contracting and the free exercise of the will and judgment of the parties by not allowing them to be sole judges of the benefits to be derived from their bargains, provided there is no incompetency to contract, and the agreement violates no rule of law. As the law will not stop to scrutinize the amount of benefits conferred upon one party, so neither will it scan the extent of trouble, loss, or obligation the other party has subjected himself to.
11 Fla.Jur. Contracts § 63 (as quoted in A.C. Associates, 453 So.2d at 1129-30). As we have said, the agreement in this case reflects the plain meaning that one-half of *132 all property purchased during the marriage would belong to the wife upon dissolution.
The husband’s arguments must derive from general inferences. But, the paragraphs upon which he relies for those inferences do not purport to create an exception to the operation of paragraph 2. In any event, it is well-settled that even to the extent that some paragraphs of the agreement arguably have the inferential effect contended for by the husband, general language of a contract must yield to specific language which deals with the matter at issue as does the language of paragraph 2. See Wooten v. Wooten, 510 So.2d 1033, 1034 (Fla. 2d DCA 1987); Cypress Gardens Citrus Products, Inc. v. Bowen Bros., Inc., 223 So.2d 776, 778 (Fla. 2d DCA 1969).
The husband also argues that section 61.075(5)(b)4, Florida Statutes (1991), entitles him to 100% of the home by defining nonmarital assets to include “Assets ... excluded from marital assets ... by valid written agreement of the parties, and assets acquired ... in exchange for such assets.... ” However, for the reasons stated above, the home was not excluded from marital assets by the antenuptial agreement. In any event, the agreement specifically provides in paragraph 10 that both husband and wife waive “all benefits of the laws of ... any ... state.” His additional argument that under that paragraph the wife waived any interest in the home must also fail; she was not to receive an interest in the home, i.e., in property acquired during the marriage, as a benefit of the law of any state but as a result of paragraph 2 of the agreement.
We recognize that Topper v. Stewart, 449 So.2d 373 (Fla. 3d DCA 1984), which interprets part of an agreement which is similar to that represented by paragraph 2 of the agreement in this case, provides support for the husband’s argument. However, the Topper opinion does not recite the entire agreement involved in that case, and rather than addressing whether or not that case was decided under controlling principles of contract construction, we note that it involved a testamentary disposition.
The husband’s remaining arguments as to the impropriety of awarding lump sum alimony through the award of three-eighths of the home have become moot. We do not find merit in the wife’s additional argument on cross-appeal that there was error in the award to her of only one-half of her attorney's fees.
Affirmed in part, reversed in part, and remanded for proceedings consistent herewith.
THREADGILL, J., concurs.
ALTENBERND, J., concurs specially.