PER CURIAM.
Donald E. Osborne appeals a final judgment of dissolution, contending that the trial court erred in modifying the terms of a 1975 antenuptial agreement between the parties. Jo Anne R. Osborne cross-appeals the same judgment, contending that the trial court erred in finding that the ante-nuptial agreement was valid and enforceable. We affirm in part, and reverse in part.
Mr. and Mrs. Osborne were first married in 1971 when they were both approximately 19 years old. The marriage lasted less than two years and produced no children. When they divorced, the property settlement agreement gave Mrs. Osborne 50% of the equity in their home, i.e., $1,012.50. She received a 1965 Oldsmobile and the marital furnishings. She received no alimony or other support. Her husband paid her attorney’s fees of $150.00.
When the couple decided to remarry in 1975, Mr. Osborne was so upset that he had been “taken to the cleaners” by the first settlement agreement that he hired an attorney to prepare an antenuptial agreement. The husband disclosed in the 1975 antenuptial agreement that his net worth was slightly in excess of $100,000.00. Apparently, the wife had no significant assets in 1975. In consideration for the usual releases of marital rights, this agreement provides in pertinent part:
12. Provision for Wife in Event of Divorce or Dissolution of Marriage.
In the event either of the parties hereto should obtain a dissolution of the marriage under such conditions that a Court of competent jurisdiction should determine [the wife] to be entitled to an award of alimony, then it is expressly hereby agreed that such award of alimony shall be rehabilitative by nature, and shall not exceed that amount of money represented by One Thousand Dollars ($1,000.00) multiplied by the number of years from the date of the contemplated marriage between the parties. A portion of a year shall be prorated, and said money shall be paid as a lump sum settlement only in the event [the husband] shall have the ability to make such lump sum payment, and in the event he be not able at the material time to pay said monies over as a lump sum settlement, then such shall be payable monthly at the rate of Eight [sic] Three & 33/100 Dollars ($83.33) per month, monthly, for so long a period of time as the parties shall have been married at the time their marriage is dissolved. A determination of [the husband] as to whether he possesses the ability to make said lump sum payment, or whether he shall pay such alimony in monthly increments, shall be controlling and final. Any alimony payable to [the wife] shall cease in the event • of her remarriage to another. Moreover, in the event any children shall be born to the parties hereto, said alimony entitlement and limitation as set out herein shall nevertheless obtain, and such circumstance of the birth of children shall not in anywise enhance said alimony entitlement or enlarge or otherwise change said alimony limitations. Neither shall said alimony entitlement or limitations increase if the cost of living index rises by reasons of inflation or otherwise.
When this 15-year remarriage was dissolved in May 1991, both parties were 38 years old. They now have two children who are 13 and 8 years old. The husband is a general manager of a car dealership with an annual income in excess of $90,-000.00. The trial court found that the hus *860 band’s net worth at the time of the final hearing was in excess of $550,000.00, including the family home which is titled in his name. In fact, all property acquired during the marriage was titled in the husband’s name. During the marriage, the wife had been the bookkeeper for the household and for some of the husband’s businesses and rental property. Her only additional work experience outside the home had been on a part-time basis, approximately 9 or 10 years prior to the dissolution. At the time of the final hearing, she was not employed outside the home. She does not have any education beyond high school.
The final judgment upheld the antenup-tial agreement but concluded that the award of alimony could be modified because of a change in circumstances since the date of the agreement. The trial court awarded shared custody of the children, primary residence to the wife, and provided for $1,600.00 per month in child support.[1] The wife received $1,000.00 per month in rehabilitative alimony for three years and $500.00 in permanent alimony. She was additionally awarded a 1988 Chevrolet, her jewelry, and most of the contents of the marital home. She also received the home, subject to existing mortgages, an asset worth about $125,000.00. This left the husband with at least $300,000.00 in assets, and about $5,000.00 a month in income.
We conclude that the trial court did not err in finding that the antenuptial agreement was voluntarily entered into by the wife with full disclosure, and that, under the controlling authorities, the agreement was fair and reasonable when drawn in 1975. See Posner v. Posner, 257 So.2d 530 (Fla.1972); Cladis v. Cladis, 512 So.2d 271 (Fla. 4th DCA 1987).
We further conclude, upon review of the record, that the trial court did not err in modifying the rehabilitative alimony provision of the 1975 antenuptial agreement. As the husband’s attorney admitted at the final hearing, this alimony provision is not “realistic” for the 1990s. The husband’s attorney also agreed at the final hearing that the rehabilitative alimony provisions of the antenuptial agreement could be modified if the trial court found that a change of circumstances had occurred since the date of the agreement.[2] See Posner, 257 So.2d at 533; § 61.14(1), Fla.Stat. (1989). The record supports the trial court’s finding that there has been a “material” change in the parties’ circumstances since 1975. Considering the parties’ relative financial positions and employment histories, we cannot hold that the trial court abused its discretion by increasing the rehabilitative alimony provision of the ante-nuptial agreement, as well as making an additional award of permanent alimony. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). Accordingly, those portions of the final judgment are affirmed.
We do, however, agree with the husband that the trial court erred in awarding the marital home to the wife as lump sum alimony. This lump sum alimony award is effectively an equitable distribution of marital property. In the antenup-tial agreement, however, the wife waived all her rights to property solely owned by the husband. This provision in that agreement is valid and enforceable. Cladis, 512 So.2d at 274-275. Therefore, we reverse this award. In light of this disposition, the trial court, on remand, may reconsider its provisions for child support, including an increase in the amount of support or, as the husband has suggested, an award of exclusive possession of the marital home to the wife, as the custodial parent, until the children reach the age of majority. See Satanonchai v. Satanonchai, 522 So.2d 1030 *861 (Fla. 3d DCA 1988); Kuehn v. Orlosky, 470 So.2d 831 (Fla. 2d DCA 1985).
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
HALL, A.C.J., and ALTENBERND, J., and MCDONALD, RANDALL, G., Associate Judge, concur.

. This amount is not governed by the guidelines because of the husband’s high annual salary. § 61.30, Fla.Stat. (1989).

. The husband attempts to argue for the first time on appeal that the alimony provision of the antenuptial agreement contemplates lump sum, rather than rehabilitative, alimony, and as such, the trial court could not modify that provision. See Urbanek v. Urbanek, 484 So.2d 597 (Fla. 4th DCA), dismissed, 491 So.2d 281 (Fla.1986). We do not have to decide in this case whether we would follow the rule announced in Urbanek because the husband failed to preserve this argument for review in the trial court.