660 So.2d 1070 (1995)
Robert H. SNEDAKER, Jr., Appellant/Cross-Appellee,
v.
Jeanne B. SNEDAKER, Appellee/Cross-Appellant.
Nos. 93-2139, 93-3070, and 93-3159.
District Court of Appeal of Florida, Fourth District.
August 2, 1995.
Rehearing, Certification and Rehearing Denied October 19, 1995.
*1071 Christopher D. Niles of Niles and Dobbins, Fort Lauderdale, and Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellant/cross-appellee.
Bruno L. Di Giulian and Teri L. Di Giulian of Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellee/cross-appellant.
Rehearing, Certification and Rehearing En Banc Denied October 19, 1995.
BROWN, LUCY C., Associate Judge.
This controversy arises from a final judgment dissolving the parties' marriage and modifying an antenuptial agreement entered between the parties. Central to the majority of issues is the validity and modification of the antenuptial agreement. We uphold the validity of the antenuptial agreement but reverse *1072 its modification. Additionally, we affirm the damages awarded to Wife pursuant to her battery claim.
Husband and Wife began seeing each other in 1985 after being reacquainted at a high school reunion. Husband was a man of ample wealth having worked himself up through the ranks of the telecommunications industry, finally becoming president of U.S. Sprint in 1987. The relationship became amorous and the parties intended to marry as soon as the dissolution of Husband's then-existing marriage became final.
Prior to marriage, both parties were concerned about their pre-marital assets, and accordingly, they discussed an antenuptial agreement to protect their respective interests. The agreement they reached was intended by the parties to keep Wife's assets hers, Husband's assets his, and to require Husband to provide everything during the marriage. Moreover, the parties contemplated that upon divorce, or alternatively, Husband's death, Wife would be left with income for life.
The issue of a sufficient annual life income for Wife was settled after some discussion and negotiation. Asked by Husband to name a fair figure, Wife stated that $50,000 would be a fair income. Accordingly, the parties agreed that Husband would provide $42,000 annually, because Wife would also receive an $8,000 social security benefit.
Thereafter, Husband had an attorney draft an antenuptial agreement encompassing the parties' intentions. After some minor changes and after the parties met with independent counsel, the agreement was signed. The agreement provides that neither party, because of the marriage, acquired any right, title, claim or interest in the real or personal property of the other. The agreement specifically provided Wife support payments on an escalating scale, based upon the length of the marriage, should the parties' marriage be dissolved. Such support was intended ultimately to be a charge against Husband's estate. Finally, the agreement contained a specific waiver of "... all rights to receive any further alimony, support or maintenance payments...."
Subsequently, the parties married and eventually settled in Ft. Lauderdale after moving several times. Thereafter, the parties purchased a marital home for $865,000 with Husband satisfying the mortgage two years later. Unfortunately, the marriage began to deteriorate. The parties were not happy together and there were two instances in which Husband allegedly battered Wife. Shortly after the second incident, Wife petitioned the court for protection against domestic violence, resulting in Husband's removal from the marital home.
Thereafter, in August of 1992, Wife filed a petition for dissolution of the four and a half year marriage. Although Wife acknowledged the existence of the antenuptial agreement, she alleged the agreement was null and void and sought, among other things, an award of temporary and permanent alimony. Husband filed his answer and affirmative defenses, counter-petitioning for divorce, alleging that the antenuptial agreement was fully enforceable and, therefore, Wife was entitled only to $42,000 a year in support. In June of 1993, Wife amended her petition for dissolution adding a count for the torts of assault and battery, alleging that on two occasions Husband attacked and injured her, for which she sought money damages.
The final hearing lasted for five days. In dissolving the parties' marriage, the trial court specifically found that the antenuptial agreement was valid, that it was not signed under conditions of fraud, and that the provisions for Wife were fair and reasonable. However, despite upholding the agreement as valid and enforceable, the court upwardly modified Wife's support under the agreement from $42,000 per year to $85,000 per year, reasoning that a substantial change in circumstances had occurred. Additionally, the trial court awarded Wife lump sum alimony in the amount of $250,000. Finally, the trial court awarded Wife $100,000 compensatory damages and $25,000 punitive damages for the tort claims.
The court below did not err in upholding the validity of the antenuptial agreement. The trial court was presented with substantial, competent evidence that the agreement was not reached under fraud, deceit, *1073 duress, coercion, misrepresentation or overreaching. See Casto v. Casto, 508 So.2d 330 (Fla. 1987); Cladis v. Cladis, 512 So.2d 271 (Fla. 4th DCA 1987). Moreover, the trial court correctly determined that the provisions contained in the antenuptial agreement were fair and reasonable for Wife, given the circumstances of the parties. Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962). Therefore, Husband was not required to demonstrate either a full and frank disclosure or a general and approximate knowledge of the character and extent of the marital property. Id.
Our greatest concern involves the issue of modification. Section 61.14(1), Florida Statutes (1993), vests the circuit courts of this state with the power and jurisdiction to modify antenuptial agreements based upon a material change in circumstances occurring after execution of the agreement. See generally Steffens v. Steffens, 422 So.2d 963 (Fla. 4th DCA 1982); Osborne v. Osborne, 604 So.2d 858 (Fla. 2d DCA 1992). However, as this court has held, the right to seek modification, like any other right, may be waived, whether arising out of the constitution or conferred by statute or secured by contract. Turner v. Turner, 383 So.2d 700, 703 (Fla. 4th DCA), rev. denied, 392 So.2d 1381 (Fla. 1980). In Turner, this court affirmed the denial of a petition for modification of alimony where the parties, by their own agreement, conclusively and finally waived the right to petition for modification. Id. at 704. In reaching that determination, this court concluded:
... there are no public policy reasons which prevent a party from waiving either the right to alimony in the first instance or the right to subsequently obtain modification of alimony.
Id. at 703; see also Driscoll v. O'Reilly, 486 So.2d 693 (Fla. 4th DCA 1986); Goppert v. Goppert, 642 So.2d 589 (Fla. 4th DCA 1994).
Like the litigants in Turner, Husband and Wife, in the instant case, conclusively and finally waived their right to a modification of the support provisions of their marital agreement. The agreement in the instant case specifically set Wife's support at $42,000 per year, based upon the length of the marriage. More importantly, the parties agreed that amount was final and waived any future right to modify. Specifically, the agreement provided:
[Husband] and [Wife] hereby mutually release and waive any and all rights to receive any further alimony, support or maintenance payments of any kind, whether temporary or permanent, from the other in the event of an annulment, action for separate maintenance or divorce, and any property division resulting from such annulment, action for separate maintenance or divorce shall be made in accordance with the terms of this agreement.
This language is clear and unambiguous. It creates, under the circumstances of this case, a valid waiver of any future right to modify the support payments outlined in the agreement. Therefore, the trial court erred in applying the change of circumstances test, which resulted in an erroneous upward modification of Wife's support payments and in an erroneous additional award of lump sum alimony.
We also write to address the propriety of the trial court's award to Wife of damages for her battery claims. Pursuant to section 741.235, Florida Statutes (1993), and Waite v. Waite, 618 So.2d 1360 (Fla. 1993), there is no question that a person can maintain this type of personal injury claim against a spouse. The issue raised is whether the lower court properly resolved the battery claim in the context of a dissolution proceeding. We find there is nothing improper in pleading a battery claim as a separate count in a dissolution action. See Hahn v. Hahn, 595 So.2d 1098 (Fla. 4th DCA 1992) (Wife's claim for battery was viable in a dissolution proceeding); In re Jaquis, 131 B.R. 1004 (Bkrtcy.M.D.Fla. 1991) (Spouse's claim for infliction of genital herpes allowed in a dissolution proceeding). Moreover, we note that in the instant case, Husband never moved to sever the personal injury count nor requested a jury to try the battery claims. Husband can thus be afforded no relief on appeal.
All other issues raised by the parties are affirmed or rendered moot by this opinion. Accordingly, because the trial court erred in *1074 modifying the antenuptial agreement, this case is reversed and remanded with directions to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
STONE and PARIENTE, JJ., concur.